PRIEUR *v.* E. H. STAFFORD CO.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTIONS
FOR JURY.

> Plaintiff backed his horse and wagon to a freight house, as was
> his custom, to load the wagon with barrels. The street in
> front of the door was 29 feet wide, and the horse and wagon
> standing across it occupied 22 feet, leaving a way but 7 feet
> wide for other wagons to pass. The back of the wagon was
> 2 feet from the building, to allow plaintiff to get in between
> it and the building to fasten a wire across the wagon to hold
> on the barrels. While plaintiff was so engaged behind the
> wagon, defendant's servants attempted to pass plaintiff's
> horse with a furniture wagon 7 feet wide, on which church
> pews 12 feet wide were loaded, one of which struck the head
> of plaintiff's horse, causing it to back, injuring plaintiff.
> *Held*, in an action for the injuries received, that defendant's
> negligence and plaintiff's contributory negligence were for
> the jury, and that it was error to direct a verdict for defend-
> ant. GRANT, J., dissenting.

Error to Muskegon; Russell, J. Submitted February
1, 1901. Decided March 26, 1901.

Case by Hilaire Prieur against the E. H. Stafford Com-
pany for personal injuries. From a judgment for defend-
ant on verdict directed by the court, plaintiff brings error.
Reversed.

Plaintiff was a dealer in oil and barrels, and as such
frequently went to the freight house of the Chicago &
West Michigan Railway Company to receive and unload
barrels. He had a tall rack, with slanting sides, upon his
wagon, on which to load the barrels. Opposite the freight
house the roadway was 29 feet wide, and then crowned to
an elevation of 2 feet 4 inches higher to the railroad track
and packing house opposite. Plaintiff backed his horse
and wagon at the first door of the freight house next to

Third street, and 100 feet therefrom. The hind wheels of the wagon extended a few inches beyond the end of the wagon. With the wheels against the side of the freight house, his horse and wagon occupied 20 feet of the roadway. After he completed his load, he started his horse up 2 feet to enable him to step between the rear of his load and the freight house, for the purpose of tieing wires across the rack to prevent the barrels from falling off. Thus standing, the horse and wagon occupied all but 7 feet of the level part of the roadway. He testified that it was necessary for him to get between his load and the building to tie the wires. While he was thus standing behind his load, the defendant's wagon, driven by its servant, turned into the roadway from Third street with a load of furniture, to be taken to one of the doors of the freight house beyond where the plaintiff's horse was standing. The platform wagon was 7 feet wide, and a portion of the load consisted of church seats 10 or 12 feet long, which projected from the sides. These seats were in the middle of the wagon. The driver saw the horse and wagon, but did not see plaintiff. Thinking that there was room to drive in front of plaintiff's horse, he did so, with the right wheels as far upon the elevated part of the highway as he thought was safe. As defendant's horses passed the head of plaintiff's horse he saw them, and testified that he hallooed to the defendant's driver, but that he paid no attention. No one heard the plaintiff's call, not even the man who stood in the freight house 12 feet from him. Plaintiff's testimony tends to show that one of the seats struck the head of his horse, causing him to back; that he had not time to extricate himself before he was caught between the rear of his wagon and the building, and injured. Plaintiff's testimony also tended to show that his horse and wagon stood in the usual way and place for loading and unloading. The only disagreement of fact is whether the head of plaintiff's horse was struck by one of the seats, plaintiff testifying that it was, and the two men on defendant's wagon testifying tha

it was not. The court directed a verdict for the defendant.

*James E. Sullivan* and *Cross & Lovelace,* for appellant.

*Smith, Nims, Hoyt & Erwin,* for appellee.

GRANT, J. (*after stating the facts*). 1. Was defendant guilty of negligence? The defendant is, of course, responsible for the negligent acts of his driver when engaged in his master's business. The defendant had employed a competent driver and safe horses, and he had placed another employé upon the rear of the load, whose duty it was "to watch and see that the load cleared everything, and that nothing fell off." But these precautions did not relieve him from the negligence of his servant. His servant was driving in a careful and prudent manner, unless the act of attempting to pass within the space left was in itself negligence. Plaintiff's horse and wagon were standing across the roadway, without any driver in sight. Plaintiff was behind his load, and could not be seen. It is a matter of common knowledge that teams, in such places, drive in close proximity to the heads of horses. If there is sufficient room to pass, the driver of the passing vehicle is not guilty of negligence, though the horse take fright and back or run away. The driver of defendant's team would have been justified in backing plaintiff's horse and wagon so as to give him room to pass, unless he had reason to believe that somebody was standing behind the wagon in danger of being injured. Defendant's driver had no reason to suppose or believe that plaintiff was standing there. If he had, defendant would, undoubtedly, be liable, if his driver had intentionally backed his horse, or had driven in such close proximity as to strike the horse's head, and thus cause him to back. Defendant's driver had no knowledge that it was necessary or customary for plaintiff to stand behind his load to draw wires across it. Why should the driver of defendant's team

expect that plaintiff was at work in this space of two feet, in the absence of any evidence tending to show that he had any information that this was common or necessary? For all that appeared, plaintiff might be in the freight house. The learned counsel for plaintiff invoke the rule, as to plaintiff's negligence, that the law did not require him to be on the lookout for danger that could not be expected to exist. For the same reason, defendant's driver could not be required to guard against danger which he had no reason to anticipate. The driver's act can only be made negligence by finding that he had good reason to expect that danger to plaintiff would result by his conduct, and there is no evidence to support such a finding.

2. Was plaintiff guilty of contributory negligence? Plaintiff was in a public roadway. He knew that teams were liable to pass. Though it be true that his horse was steady, yet had he a right to suppose that his horse would not become frightened at some load passing in close proximity to him, or that it might strike his head, or that the horse might back for fear that he would be struck? He still left room for many teams to pass, and there is no doubt that defendant's driver thought he could pass without striking the horse, and, according to himself and his attendant, who were the only ones in position to see, they did. There is no testimony to show that it was a custom for teamsters doing business at this freight house to start up their teams two feet, and stand behind their loads to arrange them, or that any one ever did so except the plaintiff. He was so intent upon his business that he did not see the defendant's team, and took no steps to look for it, until the heads of the horses were past his own horse. So, too, the driver of defendant's team was intent upon driving his team through this space, taking care not to get his right wheels too far upon the high ground so as to endanger his load, and to avoid hitting the plaintiff's horse. I think it was the duty of the plaintiff to be on the lookout, and that he was guilty of contributory negligence in not doing so.

The judgment should be affirmed.

MONTGOMERY, C. J. In addition to the facts stated by my Brother GRANT, it should be stated that the plaintiff, in backing his wagon up to the freight house to take on the load, was pursuing the usual course, as the testimony shows; indeed, such testimony was hardly needed, for the very fact that this door was provided suggested that it must have been intended that vehicles to take on freight must approach it in some way. The construction of plaintiff's wagon was such that the freight could not be taken over the side. The only way possible, then, was to back the wagon up to the door. What, then, is the effect of this holding of the circuit judge? It is that there is no actionable negligence in driving a portion of a load against a horse standing in the highway, or that the occupation of this portion of the street was negligence *per se* on the part of the plaintiff. In my judgment, neither position can be maintained upon authority. We have so often held that the question of negligence is for the jury when different persons might honestly draw different conclusions from the facts that it is unnecessary to pause to cite the cases. Can it be said that men might not differ as to whether it was negligent for this plaintiff to back up to the door of this building provided for that purpose, to take on his load, start his steady 22-year-old horse ahead far enough to permit it, and step to the rear of his wagon and fasten the load on before driving away, particularly when the evidence shows that it was indispensable to start the horse up in order to admit of fastening the load on? I confess I cannot conceive upon what principle or authority such a holding can be made. On the contrary, in the case cited by defendant (*Le Baron* v. *Joslin,* 41 Mich. 313 [2 N. W. 36]), the question was held to be for the jury under circumstances quite as strongly tending to show want of care on the part of the plaintiff. In that case the plaintiff left his horse tied by the side of the road, with the hind wheels of the buggy extending to the traveled part. The horse was left standing unattended. The evidence on the part of the defendant tended to show that

the defendant's carriage would have passed in safety if the plaintiff's horse had not backed up. Plaintiff's contributory negligence was held to be a question for the jury. It will be seen that in that case there was no necessity for plaintiff's wagon to occupy the position it did, as was the case here. See, also, *Park* v. *O'Brien*, 23 Conn. 339; *Greenwood* v. *Callahan*, 111 Mass. 298.

But, in another view, this case was, as to this question, a case for the jury. The position of the plaintiff's horse was seen by the defendant's driver. It was apparent, or should have been, that, if he attempted to drive through the space left, some portion of the load must come in contact with the plaintiff's horse. Two solid substances cannot occupy the same space at the same time. Had the driver, then, the right to proceed to drive against the plaintiff's horse, and charge the consequences to the plaintiff's alleged pre-existing and discovered negligence? The law has not been so since the decision of *Davies* v. *Mann*, 10 Mees. & W. 546. In this leading and familiar case the question presented was very similar to the one here involved. Plaintiff had left his donkey tethered in the public highway. The court said:

"Although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. *Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road.*"

Was there evidence tending to show defendant's negligence? My views upon this question can, perhaps, be deduced from what has been said. The idea that the defendant's driver, approaching this place with a load too wide to pass through it without striking the horse in the way, might proceed, and not be chargeable with negligence, is not justified.

The judgment is reversed, and a new trial ordered.

Hooker, Moore, and Long, JJ., concurred with Montgomery, C. J.